Our next case is NCS Multistage Inc. v. Nine Energy Services, Inc. Counselor Preston, you reserve five minutes of your time for rebuttal. Yes, I would like to reserve five minutes. Thank you.  We're ready when you are. Great. Good morning, Your Honors. Hilary Preston from Vincent & Elkins on behalf of Nine Energy. We have a number of issues, as the court knows from the briefing, because it was a, this is an appeal after a full trial. The ones that I would like to focus on, of course, in addition to anything Your Honors want to focus on, are three. The 102B issue, which we've already talked about a little bit in the companion case. If we vacate on the casing stream construction in the case that preceded yours, does that deal effectively with the construction in this case? Your Honor, we believe in our case, if you vacate. We have to vacate in this case as well? Yes, I agree. The issues are the same. The impropriety of having the size restriction applies equally in our case, as it does in the TCO case. In our case, we believe if you vacate on the casing stream construction and give it its appropriate construction, there should be a new trial on invalidity in our case. If that were to happen, what issues would remain for our consideration? Is there something else we should decide or it's vacated enough? Does that dispose of the entire case? Your Honor, we have a number of issues. To answer your question, we don't think that's the only issue that would need to be decided if you are going to remand. The issue of the appropriate construction of the internal diameter claim limitation, which is not present in the TCO appeal, we do believe it's appropriate if there is a remand to correct the court's improper exclusion of certain evidence that was excluded in our case. This is what's referred to as the TCO Maersk communications, which I can address, and we do believe it's appropriate for the court to consider the 102B1B issue in our case as well, if there is a remand. And that's the complete list of what you think would need to be decided? Just want to... Fair question. It's a long list. Level set. We think, in addition, the court should address the need for a new trial on damages if there is a remand, but I think that would come naturally if we do have a remand on the liability issues. Your Honor, if I may, with respect to the internal diameter limitation, since that is one that is not present in the companion case, as is addressed in the briefing, the court made, in our judgment, a very serious and very obvious mistake in the claim construction. The court says, and I'm reading from Appendix 33, the plain and ordinary meaning of internal diameter, where the plain and ordinary meaning can refer to both an inner surface, that's the inner surface of the cylinder, and a measured diameter. The measurement that defines the width of the pipe that we're talking about. Same measured diameter we're talking about when we're having this entire issue around casing or tubing, that measured diameter. The court gave this term, internal diameter, two different geometrically opposed constructions. So I understand that's what you argue, but I don't understand the district court's construction to be doing that. You argue that the internal diameter is measured by the line of the diameter goes this way, and that the inner surface goes this way. I don't think that's what that means at all. He means inner surface, the plain, as measured by attaching all the way around versus measuring it across. Those are the same planes. If I'm right, those are the same planes, right? If I understand your hypothetical, then those would be the same planes. Yes. Well, that's what his construction means. He's not going to say it means two exactly, completely different directions. And that's, if you look at the way those claim terms are read in the context of that, it makes sense that they're talking about that, because one, it's talking about the width, the measurement. The other one, it's talking about the plain on which it's attached. And if those are both the same planes, then those are entirely consistent claim constructions. I agree with you. He added in stuff he didn't need to do, but I don't see that. I think the way you've categorized his claim construction is not what he meant. That may be. I don't know what Judge Albright meant, but what he said and then how it was used in the case we do believe requires reversal, because what we have is in what we refer to as the parent. If he means what I said he means, he's okay. I don't agree, Your Honor. I think that if. Wait, wait, wait. Okay. Stop that, because I want to make sure I understand your objection to what I said. Internal diameter. We can all agree that diameter is the line that goes across the circle. There's no disagreement. We all agree. For the second part of that claim, it's talking about the, where the thing, where the device is attached. And it's talking about an inner surface where it's attached, which is that plane. It's attached here. I understand Your Honor's gesturing to refer to the same plane. The circle. In which. You have a pipe. I understand this is going to be bad for the record, but I can't. That's okay. We're an appellate court. We're not a trial court. So I don't think I have to be that. I'm paying attention to the gesturing. And so the inner surface is the ring around. And he's referring to the plane defined by that inner ring. If that's what he's referring to, that's the same plane as internal diameter, right? I understand you. No, no, no. Answer my question.  I agree. So if my understanding of what his claim construction is, you agree that that would be consistent with each other, those two terms. You're just defining the plane in two different ways. One is a straight line across. One is the plane that connects the internal surface around her ring. Not up and down. Correct. I agree with you. It can't be up and down and across at the same time. If that's true, it's either indefinite, it's wrong, it's going to go out. My understanding and the way this looks from the arguments and stuff is that's not what happened. That is. He looks at the plane and says, yes, the internal diameter is bigger than the casing tube, which is part of it, and where it's attached is parallel to the inner surface ring of the casing tube. So, Your Honor, if the construction means, as you've just described, those two things, then there is no dispute that NINES products do not infringe. Okay. And I think this is where we've had some problems in the trial and the reason that we've asked for it. So if you look, Your Honor, at how this issue of non-infringement is presented in our briefing, specifically the opening that my colleagues have to argue that there is evidence for infringement. Counsel, can we look at some pages? I'm not as good as Judge Hughes is at just talking about it with my hands. Can you show me a page and describe it so that I can understand exactly where we all are on this? Absolutely. So with respect to this non-infringement issue, which, if the construction is, as Your Honor described, I think is straightforward and the court should vacate the judgment and direct the court to enter a judgment of non-infringement. If you look, Your Honor, at page 24 of our gray brief, which is where we compare the accused products, the breakthrough products, to the Gano reference, which is one of the prior art references that is addressed in the prosecution history. So this issue of what the inner surface means or the internal diameter, or in our words, the measured diameter, half of the court's construction, really, really matters. Because what the claim requires is that a particular attachment region be parallel, right? To that internal diameter. And NCS, in its prosecution, has told us what that attachment region is. They told us with respect to Gano. So when we look at Gano. Okay. I understand that. But the problem you have is you haven't preserved an invalidity argument with regards to this prosecution history, right? I understand your point throughout was if this articulation of how your device is attached infringes and Gano has to invalidate. I was actually making a separate point, Your Honor. Okay. But if that, I mean, that would be right too, but you haven't preserved that argument, have you? We did present evidence on Gano and invalidity in trial. You didn't move a mall on that. Correct, Your Honor. Okay. So we're not, I'm not really interested in, right? I'm not really interested in Gano though. I'm interested in, does your device attach at the plane as defined by the internal diameter? Yes. And, and, and it does not. That is my point. I was using Gano just to provide clarity as to how obvious that is. What the evidence shows. Again, going back to pages, are you showing us, and if we can even use the colors that you have in your brief to clear up the record, page 25, right? Has the actual devices. Would that be helpful? Page 25. Of the gray brief. You have me in the gray brief. I am in the gray brief. Yep. I think page 25. So rather than looking at the page before the head Gano, would page 25 be more appropriate to answer the question posed by Jishu? It would be incredibly helpful, Your Honor. Yes. In, on page 25, the attachment region is shown as yellow or orange, depending on how your printing come out, if it came out. So the line that is sloped, that is the attachment region. It is not parallel to any internal diameter, whether an inner surface version or a measured diameter. That the only place this is attached? That is correct. That is what the evidence shows. That is the attachment region where there is ceiling engagement. It's not attached above it? It is not, Your Honor. That is where. It's, it's a, it's an assembly that goes, that attaches the upper and lower casings, right? Correct. The attachment region of the claim lane, which focuses on where is there ceiling engagement? And what the evidence at trial shows is that that location where it sits is where there is ceiling engagement. That is the attachment region. And it is not parallel to the internal diameter, period. So we do believe that it would be appropriate for there to be, for this court to vacate the judgment and direct non-infringement. This whole assembly doesn't touch the pipe any place else. It doesn't attach any place else except those two yellow lines. That is what our evidence at trial showed. That it actually. What their evidence showed? I'll, I will let my colleague speak for himself. I believe. That's the problem for infringement purposes. If they say, their experts said, well, it may attach on these, these yellow lines, but it also attaches at another portion that is, and I should stop gesturing, but you know what I mean. The internal diameter plane, then there would be enough evidence for infringement. I don't believe there's been any evidence offered and they've certainly not covered it in their brief that there is another attachment. The argument in their brief that they make for non-infringement is to address, to create out of whole cloth based on nothing in the record, these red boxes around the entire tool and call that the attachment region. Well, that's the assembly. I mean, the entire thing, because we're talking not just about attachment, we're talking about, these claims are incredibly badly written and hard to parse. But it's a, I mean, it's, Bob, it's a float tool and then they're ruptured. I don't want to read this all because we're going to waste your time. May I point your honor? Wait, the region of the tubular member. Where the rupture disc is attached. Right. The region of the tubular member. So nevermind. I don't want to go into this. I spent way too long about my clerks to even to figure out which of these phrases are modifying which of these phrases, but we're talking generally about the region of the tubular member itself. The region of attachment, we know what region matters. NCS has told us, and this, your honor, is where I come back to the Gano portion. Okay. I'm going to ask you this because I can't ask my questions without asking you this. Does parallel to the internal diameter modify region of the tubular member or rupture disc? I'm sorry, your honor. Do you mind repeating your question? Yeah, you've got the claim language in front of you. Yep. So the second half of the sentence at the last paragraph we were talking about says the region of the tubular member, that's the opening part of that sentence or phrase, where the rupture disc is attached. So that's referring to a region where the disc is attached. And then it has two clauses beyond that. Do both of those clauses modify the region of the tubular member where it's attached? Correct, your honor. Yes. It must be wider than, and it must be parallel.  Yes. I don't think there's any dispute about that. Right. So where it's attached, the tubular member has to be parallel. Has to be parallel and it has to be wider. Yes, your honor. And we know that very clearly. With respect to the Gano thing, just one point. And you're saying that that reading has to be specifically where the two, the, this is what I find problematic about this claim language. And it may be their problem or it may be your problem because how much leeway the jury has. Are you saying the rupture disc itself has to be attached? That where the rupture disc is attached is parallel or the region of the tubular member where the rupture disc is attached. That doesn't even make sense to me. I understand. The tubular member is the whole thing. Correct, your honor. If I may just make one point with respect to appendix page 125, this is the portion of the prosecution history where they distinguish over Gano. They tell us what region matters and they talk about it with respect to the figure of Gano. You didn't ask for a claim construction that specifically focused it on where the rupture disc attached. You asked for a plain and ordinary meaning of internal diameter is the line. So now you're trying to actually limit it to Gano because you didn't get the internal diameter. No, your honor. I'm just drawing the attachment. I agree with that, your honor. The other case is a mess too. They're both a mess. I, because I can see a lot of this just depends where you draw the box and what you're looking at for what the attachment is. I'm sure your, your opponent's going to get up and say, we're not looking at just these little yellow lines. There's no dispute. Those, he's not even going to try to say those little yellow lines are parallel to the internal diameter. He's going to point to a different attachment point and saying that's parallel to the internal diameter. I assume if he's going to get up here and say that parallel, the internal diameter can also mean the side and it's parallel because it goes up and down versus across the pipe, then he has, he has some trouble with this case, but I don't think that. I'm, I am, I apologize. I am well into my, may I hold some minutes for rebuttal? Um, I just one point before I reserve my time for rebuttal. Um, the question was asked about the casing string and why, why it matters. Um, just one point, your honors. It matters because in our case, their expert relied expressly on the size limitation to argue that something was not prior art. Um, we've addressed that in our gray brief at page 10 and the, the actual words are recreated in the gray brief. The, their expert expressly says, do not look at this. It's too small. I mean, that's my language. That's my language, but the quote is in our brief. Talks expressly about something being three and a half inches and therefore not qualifying as prior art. We won't have that testimony if the claim construction gets fixed. So I think the cases, the network one case, the echo lab case are very clear that when someone relies on a claim construction, that is reason enough to send it back for a new trial based on that new construction. We'll, we'll restore some of your rebuttal. Thank you. I appreciate it. Let's hear from Counselor Lugosteta. I'm sorry, Judge Ray, I didn't hear you. You're ready to go. Okay. We started with Kate, Ms. Uh, Preston started with casing strings. So let me talk about that a lot already. Can we talk about internal diameter? I was not. No, I want to talk about internal diameter. That's what I'm confused by. You can get to that if we have time.  Um, whether you accept the proposal that nine is putting on the table right now, which is not the same proposal they put on the table in the district court. What do you think the proper construction is? Or do you think that those, the way he did it is really the same claim? So we argued in claim construction that internal diameter has to have two different meanings in the claim because you, when you're talking about a width, that's a scalar property. So like four and a half inches. It's across, right. And when you're talking about a parallel line, well, it's the same line. It's, it's a plane. It's the same plane. When you say same plane as the diameter, it could be the same plane of diameter, but the inner surface is also the cylinder around.  But if you define a plane across that inner surface, it's the same plane as internal diameter. If you define it that way, it is. You're not, and correct me if I'm wrong and be candid, you didn't argue to the jury that the plane could be up and down the sides of the pipe, did you? We didn't argue planes. We argued that if you're comparing what surfaces are parallel, that you have to look at the attachment region. So that's where, that's where we differ. Ms. Preston says it's that slope line. I'm still trying to understand if you, if you argued inconsistent planes for the attachment region, or if you argued that it had, for the width portion, it's wider than the diameter line. And for the attachment, it's on the same plane as the diameter line. We, as I said, Your Honor, we never argued about a plane this way. You argue about a plane up and down? We argued that this surface, the up and down, was parallel to the casing ID internal surface. So that's wrong. You can't have those two inconsistent constructions based on the same word. Well, respectfully, Your Honor, we disagree based on the prosecution history of what the inventors meant about the comparing the surfaces. Can you give me a JA page, identifying where you made these arguments? So I appreciate that you answered Judge Hughes' question directly, but I'd like to be able to know, like, by looking at the record, the JA page where the argument was made, so I can read it for myself. The JA page where we argued what? You just told Judge Hughes that you argued, and I hate, I hate gesturing, but I understood that you said you argued up and down or something to that effect. But if you could give me the JA page, I can read exactly what you argued. And if you also want to use their handy-dandy color-coded brief to further explain the arguments and all that, that would be very helpful to me for record purposes. So in our, here it is. Page 36, Your Honors, is in our response brief, is the way that 9 interprets a internal diameter plane. And you can see there that our argument there is that even if you accept 9's proposal, the attachment region where the disc is sealed is still parallel to the internal diameter of the casing string, and that would be that green line that Judge Hughes was gesturing. Wait, so which page, you said in your red brief? Yes, Your Honor, at page 37. And what do you think is parallel? This is what 9 argued was, is now arguing on appeal is not parallel. But if we take their construction, that parallel. I want to think, what do you think parallel means in the context of this for attachment? Okay, so on page 37, you can see there the disc has two little o-rings on the left and the right, and the evidence showed that that's where the disc is attached. That's the sealing surface. And so it. That the line. So that green line would reflect that plane internal diameter that you mentioned, Your Honor. Wait, I'm still confused. I'm confused because I think you just didn't. You're showing the same thing I was saying, and then you disagreed with it. That's right. So ours is on page 33. I was going to get there, Your Honor. Oh, okay. So this is what you think the planes are. Wait, so what do you think the plane is? So on page 33 is where we argued to the jury that on the right side, that's the patent, that that surface, that attachment surface is parallel to the casing ID. Can you use the colors? Because they're color coding. Yes, in green. Can you be clear about what you argue? The region where the disc is attached is the red box. Okay, the sealing surfaces are on the left and right of the tube. That's 50, I believe 52 indicates the seal. Okay, and the surface to which that is attached, that cylindrical wall, our argument was is that that is parallel to the casing ID.  So in the prosecution history, the distinction was the Ganot disc was compressed on an angled surface. You can see that on the left. You can see the sloped walls right there. There was no, it was not a O-ring seal to sidewalls. It was a compression type fit. So you would smash that disc onto that sealing surface. The argument that was made during prosecution history was that the claims were amended to that the sealing surface is parallel to the casing ID and that Ganot's sealing surface is sloped. So is your point that the green lines is where the attachment would occur in terms of what's on page 33 of the red brief? That is correct. That is where the attachment is because that's the sealing surface. And the evidence at trial clearly showed that. Can you tell me how that interplays with the gray brief, page 25? I just need to get all this in front of me. So gray brief, page 25. Yeah, I want to understand the interplay between page 33 of the red brief and page 25 of the gray brief in this case. Okay, so we're comparing gray brief, page 25 to gray brief, page 33. I mean red brief, page 33. And maybe you can't compare it because you only have Ganot on the patent. So the gray brief, 9's position was that the sealing surface in their tool doesn't infringe because the yellow lines are not parallel to the casing ID. Okay, we don't think that's the correct analysis. For one, that's not the sealing surface. That's just a seat that it sits on. So that's not the attachment region. That thing is locked in on the sides where the O-ring is. So you can't draw the lines there. That doesn't make any sense to do that. They want to say our device is like Ganot. It's not like Ganot. Ganot was compressed down on. Keep talking about sealing surface. Yes, Your Honor. And that would be, that's what you think has to be parallel to the direction of the inner wall. Right? That's correct because of the way the claim language is written. It modifies, it's the region of the tubular member where the disc is attached. And so that's the sealing engagement surface. It doesn't say sealing engagement surface. It does by. This claim is awful. And this is your problem because it makes no sense. First of all, we would read internal diameter to mean the same thing. We certainly wouldn't mean it to read one horizontal, one perpendicular direction. If you meant that it was sealed, it was parallel to the wall for the sealing surface, you shouldn't have used parallel to the internal diameter. That's why the prosecution history is so important to understanding as part of the intrinsic record to what the inventors meant by that term when they were distinguishing. I don't think the prosecution history helps you very much because I think if Ganot is relevant, then either their device doesn't infringe or your patent is invalid. So I disagree with that, Your Honor, respectfully. I think that the inventors were clear when they were. Let me just start because we're not going to agree on this. Let me just ask you, if we think that you have not done enough to support the construction the way you're positing it, that internal diameter actually means two different planes, one along the pipe and one across the pipe, and that it has to be read one way, what do we do with that? I don't think there's anything to do if you disagree with me, Your Honor, because even in their interpretation that you're looking at planes of diameter, it still infringes because all the planes in that ceiling surface are parallel. Doesn't this discourse we just have demonstrate that what we have before us is a factual dispute that needs to be settled by the district court? I think the factual dispute in claim construction, Your Honor, with the non-infringement. Well, in claim construction and determination of some of these issues that we're discussing, there may be additional aspects of the claim that need to be addressed. We don't believe there are aspects that need to be addressed, Your Honor, because for a number of— Is that not possible? If you argue to the jury that for this second part, the plane could be up and down the surface of the pipe and that's where their device attached and was parallel, and if that is an entirely incorrect claim construction, how could that not be harmful error? I don't want to get in dispute about whether or not I disagree. That's why I'm asking you, if that's the case, if that's what we find, isn't that a harmful error? If you find that it's the incorrect claim construction, I don't think it's harmful error because the device still infringes as a matter of law. They've asked for JML of non-infringement based on their— How do we know that the jury would have found infringement if it had looked at the right plane to being attached? They would have argued the attachment is on these yellow slants, and you would have argued, I guess, that the attachment was up above on that plane, which is what you didn't argue, you said to me. So then the jury would have had to decide where the attachment was, and you would have to argue a different attachment region. I don't think there's any dispute in the record that where these discs are attached is— Yes, but you argue, let's just assume that your argument was based on the parallel was up and down the sides of the inner surface. Understand. That as a matter of law is incorrect under the claim construction I am hypothetically going to find. So the jury didn't have testimony and argument from you that it also attached on the parallel plane. Don't we have to send that back to the jury? Didn't have that testimony from us, but it had it from nine. Well, I think they have the—I think your opponent's going to disagree with you. Their testimony was it attached on the vertical yellow slants. I understand we have a dispute between the two of us about where that attachment surface is, but we think there's more than enough evidence to show that that's not— That dispute is over infringement. Their dispute is over infringement, right. And where they're saying the attachment surface is doesn't make any sense. There's no dispute that where it's attached— Factual issues remain over the dispute of infringement. I don't think there would be a factual issue that remains on the dispute of infringement. It would be if the court construes it the way that nine is asking to construe it right now, we believe it would be a summary judgment of infringement. Any other questions? I just want to say one thing about the internal dynamiter piece. This is a vastly different position than it took in claim construction. What it argued in claim construction was that inner diameter was just a measured scalar property. And then they said the parallel term— Which is the normal meaning of diameter. Okay, we agree that it includes measured diameter. But then they argued— The problem is when you distinguish yourself over Gano, you put in claim language that inherently doesn't make much sense. That the internal diameter is parallel to the inner surface. If what you meant to talk about was where the thing attached to the inner surface, you should have said that and not repeated the phrase internal diameter, which we're going to have to find means the same thing. I understand that we have a disagreement on that, Your Honor. I just want to say, and for the record, if you look at Appendix 4693 and compare it to their position at Opening Brief 32, that's not the same claim construction position. Now, they said measured diameter was a scalar property to the court. And that's why the parallel term was indefinite because you can't assess parallel to a scalar property. Now, here, they're saying it's a non— measured diameter is a non-scalar property. They say that on page 32, which makes no sense. And then they're saying— What was the other page you gave us besides page 32, the first page? Appendix 4693. It's their Markman brief. Now, they're saying measured diameter is non-scalar and saying the parallel term is indefinite because there's dual terms. You're not going to find that in their Markman briefing. If they had an issue with that, they should have raised it after the court's claim construction. And the same thing with casing string, Your Honor, before my time runs out. When the court sua sponte gave casing string a construction of customarily greater than or equal to four and a half inches in diameter, that was a sua sponte construction. Nye didn't object to it. They never argued to the court that customarily would be confusing. They didn't object to the jury instructions. And that's the same exact situation that happened in this court's power integrations case. So as a threshold matter, I think their claim construction— But they had already— They already had their opposing claim construction. They don't have to have Markman. You disagree. The district court comes up with the claim construction, and then they have to move for reconsideration. They've already put the court on notice what they think the proper claim construction is. I agree. And they're allowed to appeal that when they lost. I agree that they put the court on notice of what their claim construction is, but their appeal issue is that the word customarily was confusing. I didn't raise that term, and neither did them. That's a term that— I don't disagree with that construction. They're still allowed to argue for their claim construction, which is there's no size limitation. They can argue— They're not just objecting to customarily. They're objecting to the inclusion of that entire phrase about size limitation. Well, I— And they preserved that. In their briefing, they say the term customarily injected confusion to the jury because they didn't know what to do with that term. So that's a new argument. My time's up, Your Honors. Thank you very much. Your Honors, I— I'm going to apologize to you because he actually did argue that there are two— Correct. —entirely inconsistent directions. So you're right. It's baffling to me, and I don't think that's what Judge Albright meant. But if he's meant that, then he's wrong, too. Internal diameter has to have the same meaning in the claim. I agree. There's nothing in it that suggests that it could be two different things. Now, so you can go move on from there. Yes. I think he was trying to suggest, well, if internal diameter does mean on the same plane, then there's no harm because your stuff attaches on that plane, too. But it seems to me that, you know, whether or not I agree with you that you only attach on the slant yellow or attach above that might be on the same plane is not something that they argued below. And that seems like, at least on terminal diameter, there's—has to go back. Thank you, Your Honor. If the court corrects the internal diameter construction and gives it measured diameter or something, you know, approaching that logical construction, and you don't buy our non-infringement argument on this record, then it needs to go back for a new trial. No question about that in my mind. And I won't spend more time on the internal diameter question unless, of course, there's— For a new trial. You mean for infringement also? Yes. Correct, Your Honor. Correct. Is it your argument that there's factual issues that involve infringement? Our position is that the record supports this court directing the district court to enter non-infringement based on the evidence in the record. That is the argument we made in our briefing. But if the court doesn't accept that or thinks there are fact issues with respect to the showing of non-infringement, then with the fixed construction, it needs to go back for a new trial. I just wanted to address, moving on from the internal diameter piece, one summary point about the evidence with respect to the 102B1B issue. I did not sit through the TCO trial, so I don't know exactly what was in evidence in their case. But in our case, the question of what was in evidence about what this sale of the airlock product showed is actually very clear. There is nothing in evidence that showed that the customer could see inside the tubes. And this point is, we do summarize— Which claim limitations do you think the customer would not have known about by buying, operating, and using the product according to the instruction manual? Yeah, I think, Your Honor, it's actually the one that we've been spending the most time on. It's that internal geometry. How does this thing work? Is it attached at a region that's wider than the tube? Is it parallel to the internal diameter? That is not in any of the evidence. Isn't the whole thing wider than the tube? The whole assembly? No, Your Honor, that would not be visible from the way it is delivered to the customer. And this point is actually remarkably clear in the record. The outer portion is definitely wider, but you said they could see inside. It might not be wider. It could be smaller than the casing. You wouldn't be able to tell, is my point. What's in evidence is you wouldn't be able to tell. And we did ask their CEO about this. We asked them if you could see inside the tube. The CEO very clearly testified that they could not. That's at Appendix 3452. And we also asked with respect to the suggestion that the demonstrative exhibit used at trial, the one that they show a picture of at Appendix 4559, which is the demonstrative they used at trial, the cut-apart tool. I asked the CEO, could the customer see this? And he said no. So what they showed the jury at trial is not the same as what they showed the customers. And their own CEO asked that question. That is shown at Appendix 3453. A very clear question and answer. Your case seemed to suggest that there was public disclosure. I'm sorry? Yes. I'm sorry, I didn't hear the question. There was public disclosure. So what's your response to the argument that they made? That there is public disclosure? Our argument is that what was arguably publicly disclosed is a sealed tube into which you cannot see the inner workings that show all the teachings of the invention. And that's what's required by 102B1B. You have to actually disclose all of the features that are claimed. And their CEO testified you couldn't see it. Instructions on operation and other evidence that went towards the public disclosure argument. Our position, Your Honor, is that the documentation that came along with the tube does not show the claimed features. Can you tell us what the JA page is for the documentation that came along with the tube? I probably can. We don't have that in there. I apologize, Your Honor. I'm happy to put in a supplemental brief. I don't have that at my fingertips. But I do know that the record in our case does not show anything about the inner workings of the tube, about what was disclosed to Tundra. There was some usage. That's particularly these crazy terms we've been talking about, about inner diameter and all that kind of stuff and where it's attached. Correct, Your Honor. Yeah. And their CEO said, yes, that's right. You couldn't see inside it. Couldn't see those features. I'm well over my extra time. Thank you, Your Honors.  That concludes today's arguments. This court now stands in recess.